Scott, J. It is insisted on the part of the bank that the court below erred in permitting the plaintiff’s in error, on their motion, to amend the record by interlineation, after the judgment term had elapsed. The writ of error coram nobis, which, at common law, was granted in cases like this, ex debito justiliai, has almost entirely fallen into disuse in the United States from the fact that, in our practice, the end that was accomplished by it is now achieved by more motion supported by evidence offered the court in a summary way, most usually by affidavits, upon which the court either grants or refuses the relief sought. And although many amendments may be appropriately made by inter-lineation, especially where the order of court granting them specifies and describes the particular amendment allowed to be made in this wise, (as it should always do in such case,) still the more regular mode of making these amendments, after the judgment term, is by an order of court reversing the defective entry, followed by a new order nunc pro tunc, such as should have been made. 2 Washington Rep. 130. 2 Randolph, 174. As to the power of the court below to allow the amendment in question, there can be no doubt at all. The authority of the court, in such cases, does not arise from the statute of Amendments and Jeofails, although these statutes control in cases of amendment after writ of error brought, but from the high equity powers of the court, which enable it to amend in whatever may be necessary to make the record speak the truth, whenever the ends of justice require such amendment. See Hart vs. Renolds, referred to in Chichester v. Cande, 3 Cowan, 44. In Mara vs. Quin, 6 T. R. 8, Lord Kenyon, C. J., says: “The forms of the courts are always best used when they are made subservient to the justice of the case;” and Ashhuust, J., observed, “ It is admitted that amendments have been made at all times in order to forward the justice of the case.” In that case the court put the judgment forti manu two years back to prevent injustice, because it could not injure third persons. In The King vs. The Mayor of Granpend, 1 T. R., Lord Kenyon says: “I wish that that could be attained, that Lord Hardwick, in the case before him, lamented could not be done, namely, that these amendments were reduced to certain rules; but, there being no such rules, each particular case must be left to the sound judgment of the court. And the best principle seems to be that on which Lord Hardwick relied in that case, that an amendment shall or shall not be permitted to be made, as it will best tend to the furtherance of justice. Amendments of this kind are not made under the statute of Jeofails, but under the general authority of the court.” In Sumner vs. Drake, 1 Caines Rep. 9, the court allowed the judgment to be signed nunc pro tunc, because, they say, the omission “was a neglect of one of their officers, which ought to prejudice no one.” “It is to be observed on this case that, by 1 R. L. 501,s. 2, it is enacted that no judgment shall effect land, &c., as to purchasers, &c., but from the actual filing of the roll after the same shall have been signed.” Of course, by this statute,, subsequent purchasers had acquired a priority of lien, yet the court destroyed that priority by an amendment nunc pro tuncr without even calling purchasers before them. In the case of Chichester vs. Cande, 3 Cowen, 56, Woodworth, J., in delivering the opinion of the court, says that the judge who delivered the opinion of the court in Close vs. Gillespie, 3 John. R. 526, was sustained by all the authorities when he said “I cannot perceive that our right to amend in case of the mistake of one of our officers is to be controlled by the effect which is to be produced in another case.” And numerous authorities, both English and American, show that the courts will always interfere by way of amendment, and do that equity which a party would be entitled to on application to a court of equity. It is therefore (although we fully recognize the doctrine of the case of McDonald et al. vs. Watkins ad., 4 Ark., 624, “that the permitting amendments is a power which should be exercised with great caution and delicacy after the case has been disposed of and the court adjourned,”) that we hesitate not to hold, as we do, that the court below had ample power to allow the amendment in question, and that there is nothing in the record to show otherwise than that it exercised that power discreetly and properly. The remaining question to be considered is, whether or not the court below erred in sustaining the demurrer to the two pleas that were not withdrawn. One of these set up that the defendants below executed the note sued on solely as security of Stephenson, which the plaintiff below knew, and that when the note fell due Stephenson had ample means to pay, of which the plaintiff below had knowledge : but that the plaintiff below would not and did not sue or otherwise attempt to collect the debt until Stephenson became insolvent. The other plea set up that the defendants below executed the note sued on solely as security for Stephenson, and that after it became due the plaintiff below, on good and sufficient consideration moving from Stephenson, gave day and extended the time of payment without the knowledge or consent of the defendants. It is clear that the matters set np in the first plea presented no defence at all, as it presented matter that amounted to nothing more than simple forbearance by the creditor, that did not interfere with any of the rights of the security, or otherwise have any disabling effect upon him. Not so, however, with the second plea. That set up a state of things, which, if true, constitutes an effectual barrier to the recovery sought. For it is well settled that giving timo by the creditor to the principal by an obligatory contract made on a valid consideration, without the consent of the security, operates to discharge him; and that this defence is available at law or in equity: a doctrine that this court has repeatedly recognized. The giving time, however, must not only be without the consent of the security, but must be the result of an obligatory contract made on a valid consideration. That is to say, the agreement must be binding in law upon the parties thereto, and based upon a sufficient consideration. In case the alleged consideration should bo shown by evidence to have been merely a part payment of the debt, this would not be sufficient to support a binding contract for the extension of time, as this would but be a part performance of a duty, and, moreover, was for the benefit of the security. The principle on which the security’s exoneration rests is, that the creditor has, without his consent, changed the original attitude of the parties by tying his own hands, or has otherwise impaired some of the legal or equitable rights of the security in the premises, or has abstracted or impaired some of his remedies legal or equitable. The court below, then, having erroneously sustained the demurrer to the second plea, its judgment must be reversed, and the cause remanded to be proceeded in with leave to the bank to withdraw her demurrer and take issue to the second pica.